**IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

BETTY ANN CASEY PLAINTIFF

V. Civil Action No. 3:05cv98HTW-LRA

LIBERTY MUTUAL INSURANCE COMPANY
AND JOHN DOES 1-3 DEFENDANTS

## ORDER GRANTING SUMMARY JUDGMENT

Before the court is defendant Liberty Mutual Insurance Company's ("Liberty") motion for summary judgment [docket # 73], filed pursuant to Rules 56 (b) and (c)[1] of the Federal Rules of Civil Procedure. On January 14, 2006, Betty Ann Casey filed this lawsuit against Liberty in the Circuit Court of the First Judicial District of Hinds County, Mississippi, seeking actual and punitive damages resulting from Liberty's alleged bad faith in handling Casey's workers' compensation death benefits claim. Liberty removed

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provide: (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

the action to this court on February 11, 2005, pursuant to Title 28 U.S.C. §1441(a)[2] [docket # 1]. This court's jurisdiction is predicated upon diversity of citizenship as codified by Title 28 U.S.C. § 1332.[3]

## I. Background Facts

The plaintiff, Betty Ann Casey, brings this action against the workers' compensation carrier of her deceased husband's employer, Liberty, for bad faith refusal to pay workers' compensation death benefits. Plaintiff's husband, Mr. Samuel Casey, was killed in a motor vehicle accident on June 7, 2004. Determined by the Mississippi Highway Patrol to be at fault for the two-car accident, Mr. Casey had collided with another vehicle in that vehicle's lane of travel, and immediately after Mr. Casey was seen traveling at a high rate of speed. Undisputed facts show that at the time of his death, Mr. Casey was acting in the course and scope of his employment for Rapid Oilfield Services Inc. ("Rapid"). Defendant Liberty served as Rapid's workers' compensation carrier.

## II. Summary Judgment Jurisprudence

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Anderson v.*

---

[2]Title 28 U.S.C. § 1441 provides: "[A]n civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

[3]Title 28 U.S.C. § 1332 provides: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States;

*Liberty Lobby, Inc.,* 477 U.S. 242, 251,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corporation v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002). "A fact is 'material' if it 'might affect the outcome of the suit under governing law.' " *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001). The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation,* 477 U.S. at 322-23; *Anderson,* 477 U.S. at 257; *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996); *Brown v. City of Houston,* 337 F.3d 539, 540 (5th Cir. 2003); *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Company v. Image Technology Services, Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere

existence of some alleged factual dispute, or "only a scintilla of evidence." *Anderson,* 477 U.S. at 247-48; *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 540; *Bridgmon v. Array Systems Corporation,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corporation,* 477 U.S. at 322.

## III. Relevant Law and Analysis

### A. Mississippi Worker's Compensation Law

The Mississippi Workers' Compensation Act provides that statutory compensation is the exclusive remedy available to an employee who suffers an injury on the job:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee ... or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death....Miss.Code Ann. § 71-3-9 (2000).

This statute bars an employee's common law tort action against his employer's insurance carrier based on a negligent failure to pay workers' compensation benefits.

*Taylor v. United States Fid. & Guar. Co.,* 420 So.2d 564, 566 (Miss.1982). It does not, however, prevent the employee's action against the carrier "for the commission of an intentional tort" independent of the compensable injury. *Southern Farm Bureau Cas. Ins. v. Holland,* 469 So.2d 55, 59 (Miss.1984). In particular, the employee can sue the carrier for bad faith refusal to pay benefits owed because such a claim arises not from the work-related injury but from an independent act that is not compensable under the Workers' Compensation Act. *Id.* at 58-59. *Whitehead v. Zurich American Ins. Co.,* 348 F.3d 478, 481 (5th Cir. 2003).

Under Mississippi law, an employee may bring a tortious breach of contract action against the carrier for bad faith refusal to provide benefits. *McCain* v. *Northwestern National Ins. Co*., 484 So.2d 1001 (Miss.1986); *State Farm Fire & Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.1985). However, a "prerequisite to the award of punitive damages [under such an action] is the determination that plaintiff is entitled to contractual damages." *McCain*, 484 So.2d at 1002, citing *Simpson*, 477 So.2d at 242.

**B. Bad Faith Insurance Claim**

Under Mississippi law, "[i]n order to prevail in a bad faith claim against an insurer, the plaintiff must show by a preponderance of the evidence] that the insurer lacked an arguable or legitimate basis for denying [or delaying payment of] the claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured rights." *Dauro v. Allstate Ins. Co.*, 114 Fed.Appx. 130, 135 (5th Cir. 2004)(quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So.2d 530, 533

(Miss.2003)). If the insurer had a legitimate or arguable reason [to] deny coverage, then punitive damages are not appropriate. *Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1096 (Miss.1996). In *Caldwell*, the Mississippi Supreme Court defined an arguable reason as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [a] heightened level of an independent tort." Id.

## IV. Argument

In the case sub judice, plaintiff says defendant acted in bad faith in delaying payments to plaintiff. Mrs. Casey challenges Liberty's reasoning for delaying plaintiff's benefits the first four months, between June 8, 2004, and October 6, 2004, on the grounds that the company was waiting on a toxicology report to determine if Mr. Casey was intoxicated at the time of the subject accident.

In arguing defendant wrongfully denied its approval of death benefits before plaintiff filed her suit, plaintiff apparently reasons that defendant's failure to approve the payments equates to a denial of coverage. Defendant is correct to assert that there is no evidence in the record that defendant ever denied approval of Mrs. Casey's claim. Instead the appropriate inquiry is whether defendant acted in bad faith in delaying the death benefits.

After receiving a notice of claim, an insurer has a duty to perform a prompt and adequate investigation of the claim. *McKneely*, 862 So.2d at 534. The insurer must also make a reasonable effort to obtain medical records pertinent to the claim. *Eichenseer v. Reserve Life Ins. Co.*, 881 F.2d 1355, 1362 (5th Cir.1989) (applying Mississippi law), vacated on other grounds, 499 U.S. 914, 111 S.Ct. 1298, 113 L.Ed.2d

233 (1991). However, as the Mississippi Supreme Court explained in *McKneely*, "the plaintiff's burden in proving a claim of bad faith refusal goes beyond proving mere negligence in performing the investigation." Id.

Claiming it is entitled to a judgment as a matter of law, Liberty insists it never denied plaintiff's claim for death benefits; and thus, plaintiff does not have a cause of action under Mississippi tort law. According to the defendants, the plaintiff did not exhaust her administrative remedies before she brought this tort action for bad faith refusal to pay workers' compensation death benefits. Defendant asserts the Casey claim was properly assigned to an adjuster immediately following the tragedy. The adjuster meticulously investigated the claim by interviewing witnesses who saw Mr. Casey's erratic driving just before the accident. Also says defendant, credible evidence proves Liberty's agents kept in contact with the Casey family, including Mrs. Casey's representative, Mr. Casey's employer, and the Mississippi Highway Patrol ("MHP"). Finally, defendant claims a considerable amount of time was expended waiting on MHP to release its conclusions of the toxicology report.

The time-line of events transpiring after Mr. Casey's death is helpful here:

**Chronological Order of Events**

June 7, 2004:

Samuel Casey was killed in a motor vehicle accident.

June 8, 2004:

Mr. Casey's employer, Rapid Drilling notified Liberty of Casey's death and faxed Liberty a MWCC Form B-3 (First Report of Injury).

Liberty assigned the claim to Wesley Shane Jackson, an adjuster in its Brentwood, TN office.

Jackson made telephone contact with Rapid and spoke to Malcolm Loe. Loe advised Jackson that Casey was acting in the course and scope of duty; Casey was married, but had no dependent children.

Jackson obtained preliminary info on Casey's salary.

Jackson advised Mrs. Casey's brother, Kindall Beach, that he needed Mr. Casey's marriage license and death certificate.

Jackson requested that Donald Wilson of Rapid provide Liberty with a receipt for funeral expenses.

Jackson referred the case to a Liberty field investigator, Todd Lafferty

June 10, 2004:

Jackson phoned the funeral home and spoke with Carol who promised to send Jackson a copy of the death certificate.

June 11, 2004:

Jackson received a preliminary report from Liberty's filed investigator, who confirmed that Mr. Casey was killed while working for Rapid.

Jackson was advised that the toxicology report would not be available until MHP completed its investigative report.

June 14, 2004:

Lafferty spoke with possible witnesses to the accident, Mr. and Mrs. Wells, who told the investigator that he had spoken with an unidentified witness at the scene, who said that Mr. Casey had passed him at a high rate of speed prior to the crash.

June 15, 2004:

Malcolm Loe mailed the funeral bill ($6,704.00) to Shane Jackson. Such bill was paid by Rapid.

June 23, 2004:

Jackson completed his report.

Jackson attempted to telephone the MHP office who had investigated the accident, Ronnie Rayborn, to determine when the MHP report and toxicology screen would be available.

August 2, 2004:

Jackson called the State Crime Lab again to obtain a copy of the toxicology report.

August 9, 2004:

Jackson called Troop J again and left another message for Officer Rayborn to call him.

August 12, 2004:

Jackson sent a written request to Mrs. Casey asking her to contact him regarding Mrs. Casey's worker's comp. claim.

August 25, 2004:

Jackson noted that he had received a telephone call from plaintiff's attorney, Len Melvin, and told Melvin that he could begin sending benefit payments to Mrs. Casey as soon as he received the toxicology report and Mrs. Casey's marriage License.

September 1, 2004:

Melvin wrote Jackson a letter transmitting a copy of Mr. and Mrs. Casey's marriage certificate and Mr. Casey's death certificate.

September 2, 2004:

Melvin mailed his Application for a Lump Sum Payment.

September 7, 2004:

Liberty closed its subrogation file because the investigation of the accident indicated that it was Mr. Casey's fault and there was no subrogation potential.

September 16, 2004:

Jackson received a copy of Casey's marriage certificate. Jackson noted that he cannot get MHP to call him back.

September 28, 2004:

Investigator Lafferty traveled to the MHP office and left his card for Officer Rayburn to call him.

October 6, 2004:

Lafferty spoke with Officer Rayburn; Rayburn confirmed that the toxicology results for Mr. Casey, which included blood alcohol, was 0.00% or negative.

Jackson noted the file was complete and that the claim was being accepted as compensable.

Melvin filed a Petition to Controvert with the Commission. (Petition alleged that Mrs. Casey and her three daughters (ages 20, 22, and 25) were all Mr. Casey's dependents a t the time of his death.

October 7, 2004:

Jackson sent Melvin a letter saying he had all the info he needed and asked if Mrs. Casey preferred bi-weekly payments or a lump sum payment.

October 12, 2004:

Melvin wrote the Commission, resubmitting his Application for Lump Sum Payment.

October 13, 2004:

Liberty received the Petition to Controvert and immediately referred to its attorney, Don Burch, for a defense.

October 20, 2004:

Burch served his Answer to the Petition to Controvert.

October 31, 2004:

Shane Jackson left Liberty for another job opportunity, and the claim was transferred to a new adjuster, Erin Vandewater.

November 8, 2004:

Vandewater contacted Malcolm Lee at Rapid and authorized a $2000 payment to Rapid for the funeral expenses.

December 8, 2004:

Melvin wrote Jackson at Liberty a letter requesting a Lump Sum Payment, "as soon as possible."

December 15, 2004:

Liberty advised rapid that the company was waiting on an order from the MWCC before making a lump sum payment.

January 11, 2005:

The MWCC stat provided an unofficial computation of the lump sum benefits payable to the Plaintiff.

January 14, 2005:

Plaintiff filed present lawsuit in Hinds County Circuit Court.

February 9, 2005:

Liberty sent a B-18 reflecting the payment of "widow's benefits" to the MWCC. The check in the amount of $11,938.85, including benefits retroactive to June 7, 2004, was issued on February 11, 2005.

March 29, 2005:

The commission recalculated the Plaintiff's lump sum award based on her receipt of bi-weekly benefits through April 11, 2005, and a lump sum for the period beginning April 12, 2005. The amount calculated by the MWCC was $129,621.80

April 5, 2005:

The MWCC entered an order authorizing Lump Sum Payments.

April 12, 2005:
Liberty issued a check to Betty Casey in the amount of $129,962.91.

May 11, 2005:
The parties closed the file.

October 2005:
Plaintiff received her $250.00 widow's benefit with interest after it was determined the amount had not been included in the sums previously paid to the plaintiff.

Although Liberty claims the delay in payment was due to MHP's toxicology determination, plaintiff argues that no evidence pointed to an intoxication defense. Mrs. Casey contends that her husband did not drink. Secondly, Liberty's investigator, after securing the available information from witnesses who described Mr. Casey's vehicle as "traveling at a high rate of speed," did not have any evidence to prove alcoholic consumption contributed to the accident. Liberty took information from Mr. Casey's immediate supervisor who explained that Mr. Casey left the job site in Baxterville sometime after 4 p.m. en route to Columbia to purchase a battery for his company truck. The investigator also determined that Mr. Casey had purchased some tools and a funnel for Rapid Oilfield at the Carquest Auto Parts in Columbia at 4:54 p.m. The report next indicates Mr. Casey went to Columbia Starter and Alternator where he had a new battery placed into the company truck. Mr. Casey then left Columbia Starter sometime after 5 p.m. and the accident occurred around 5:30 p.m. The court notes that after Liberty's investigator interviewed all of the employees from Rapid Oil, Carquest Auto Parts, Columbia Starter, and the witnesses who happened upon the accident, no person can support Liberty's presumption that alcohol was a factor in this accident.

Still, Liberty was aware that Mr. Casey was ruled at fault for the accident; that the

collision took place in the other driver's lane and that shortly before the accident, Mr. Casey was seen driving erractically.

Liberty thus argues that it was justified in not paying Mrs. Casey benefits until it could obtain sufficient information to determine Mr. Casey's sobriety at the time of the accident.

Further, says Liberty, on several occasions it tried to obtain this toxicology report from MHP, which did not timely release the report, nor return telephone calls to Liberty. The court again notes that Liberty never denied Mrs. Casey benefits. Indeed, immediately upon receiving notification of the claim, Liberty complied with its obligation to promptly investigate Mrs. Casey's workers' compensation claim. The alleged misconduct occurred while the claim was being investigated and litigated pursuant to the Workers' Compensation Act and the rules of the Commission. Upon completion of the investigation, Liberty accepted Mrs. Casey's claim as compensable and paid the benefits due. Mrs. Casey only claims that Liberty did not pay fast enough. This court is not persuaded.

So, having established that no denial of the Casey claim occurred; that the claim was eventually paid; and that Liberty fully investigated all relevant facts, this court cannot conclude that Liberty's conduct viewed in the light most favorable to Casey, rose to the level of gross negligence or an independent tort.

**V. Conclusion**

Plaintiff bears the burden to come forth with genuine issues of material fact whether defendant had any arguable reason for delaying worker's compensation death benefits coverage to Mrs. Casey. Plaintiff has not succeeded in this endeavor. This

court finds that Liberty's conduct was not so egregious to warrant punitive damages. Therefore, the court holds that defendant's motion for summary judgment is well taken and should be granted.

**SO ORDERED AND ADJUDGED**, this the 30th day of March, 2008.

s/ HENRY T. WINGATE

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:05-cv-98 HTW-LRA
Order Granting Summary Judgment